# No. 25-3170

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

### BUCKEYE INSTITUTE,

#### Plaintiff-Appellee

#### v.

### INTERNAL REVENUE SERVICE; WILLIAM LONG, in his official capacity as Commissioner of Internal Revenue; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the Treasury,

#### Defendants-Appellants

---

## ON INTERLOCUTORY APPEAL FROM THE ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

---

## OPENING BRIEF FOR THE APPELLANT

---

JUDITH A. HAGLEY      (202) 514-8126
MARIE E. WICKS      (202) 307-0461
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
KELLY A. NORRIS
  *Acting United States Attorney*

# TABLE OF CONTENTS

**Page**

Table of contents.................................................................i
Table of authorities ......................................................... iv
Statement regarding oral argument.................................... x
Jurisdictional statement ..................................................... 1

    A.    District Court jurisdiction ..................................... 1

    B.    Appellate jurisdiction............................................ 1

Statement of the issue......................................................... 2
Statement of the case ......................................................... 2

    A.    Procedural overview............................................. 2

    B.    Legal background ................................................. 3

        1.    Tax deductions and exemptions generally ................... 3

        2.    Organizations opting to be exempt from tax under § 501(c)(3) .................................................. 5

        3.    The substantial-contributor reporting requirement in § 6033(b)(5) ................................. 7

        4.    IRS disclosure of substantial contributors is strictly prohibited .......................................... 11

    C.    Buckeye and its tax-exempt status ...................... 12

    D.    The District Court proceedings ........................... 12

    E.    The District Court's opinion and order ................ 15

**Page**

Summary of argument ............................................................17

Argument:

      Section 6033(b)(5)'s substantial-contributor reporting requirement is a constitutional condition on an opt-in tax subsidy and as such does not infringe Buckeye's First Amendment rights............................................................21

           Standard of review ...............................................21

   A.    Introduction......................................................22

   B.    Rational-basis review is the proper level of scrutiny, in accordance with the Supreme Court's analysis in *Regan* ....27

   C.    Section 6033(b)(5)'s substantial-contributor reporting requirement is a constitutional condition on the receipt of a tax subsidy and easily satisfies rational-basis review......................................................32

        1.    Reporting of substantial contributors directly relates to the government's administration of the § 501(c)(3) regime.........................................33

        2.    The substantial-contributor reporting requirement does not affect rights outside the contours of the § 501(c)(3) regime.........................................38

   D.    The District Court erred in applying *AFP*'s exacting-scrutiny standard because that case involved a mandatory disclosure regime, not a voluntary opt-in tax subsidy ......................................................40

        1.    *AFP* is distinguishable.................................40

        2.    The District Court's rationale for sidestepping *Regan* is flawed .............................................46

**Page**

E. Even under exacting scrutiny, § 6033(b)(5)'s substantial-contributor reporting requirement is constitutional as a matter of law ........................................................53

    1. Section 6033(b)(5) is substantially related to an important government interest ...................................56

    2. Section 6033(b)(5) is narrowly tailored to the interest it promotes .....................................................58

Conclusion ........................................................................65
Certificate of compliance ................................................66
Conclusion ........................................................................65
Addendum .........................................................................68

# TABLE OF AUTHORITIES

**Cases:**                                                                                                          **Page(s)**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013) ............................................. 4, 16, 27, 30,
                                                                33, 39, 47, 49-53

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  591 U.S. 430 (2020) ................................................................ 31

*Americans for Prosperity Foundation v. Bonta*,
  594 U.S. 595 (2021) ............................ 14-15, 19-20, 31-32, 38,
                                                        40-43, 47-48, 54-55, 59-61

*Armour v. City of Indianapolis, Ind.*,
  566 U.S. 673 (2012) ............................................................. 47

*Byers v. United States Internal Revenue Serv.*,
  963 F.3d 548 (6th Cir. 2020) ............................................... 54

*Cammarano v. United States*,
  358 U.S. 498 (1959) ...................................................... 25, 44-45

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010) ............................................................ 48

*Commissioner v. Sullivan*,
  356 U.S. 27 (1958) .............................................................. 23

*F.C.C. v. League of Women Voters of California*,
  468 U.S. 364 (1984) ..................................................... 46-47, 53

*G.M. Leasing Corp. v. United States*,
  429 U.S. 338 (1977) ............................................................ 37

*Grove City Coll. v. Bell*,
  465 U.S. 555 (1984) ............................................................ 30

*Harris v. McRae*,
  448 U.S. 297 (1980) ............................................................ 44

*Lewis Publ'g Co. v. Morgan*,
  229 U.S. 288 (1913) ....................................................... 25, 44

*Mann Constr., Inc. v. United States*,
  27 F.4th 1138 (6th Cir. 2022) ............................................. 54

*McMullen v. Meijer, Inc.*,
  355 F.3d 485 (6th Cir. 2004) ............................................... 21

**Cases (cont'd):**                                                  **Page(s)**

*Mobile Republican Assembly v. United States,*
353 F.3d 1357 (11th Cir. 2003) .................................25-30, 39

*NAACP v. Alabama ex rel. Patterson,*
357 U.S. 449 (1958) .......................................................31-32

*Ostergren v. Frick,*
856 F. App'x 562 (6th Cir. 2021).....................................33, 39

*Parks v. Commissioner,*
145 T.C. 278 (2015) ........................................................48-49

*Planned Parenthood of Greater Ohio v. Hodges,*
917 F.3d 908 (6th Cir. 2019) (en banc)................................49

*Quarrie v. Commissioner,*
603 F.2d 1274 (7th Cir. 1979)..........................................8, 36

*Regan v. Taxation With Representation*
*of Washington,*
461 U.S. 540 (1983) ............................ 4-5, 13-15, 18-19, 23-26,
27-29, 31-33, 39-40, 42-52, 59

*Rust v. Sullivan,*
500 U.S. 173 (1991) ..................................16, 26, 33, 49, 50-51

*Speiser v. Randall,*
357 U.S. 513 (1958) .............................................................45

*United States v. Am. Libr. Ass'n, Inc.,*
539 U.S. 194 (2003) .............................................................27

*Vill. of Schaumburg v. Citizens for a Better Env't,*
444 U.S. 620 (1980) .............................................................41

*Wis. Educ. Ass'n Council v. Walker,*
705 F.3d 640 (7th Cir. 2013)................................................48

*Ysursa v. Pocatello Educ. Ass'n,*
555 U.S. 353 (2009) .........................................................32-33

*Zillow, Inc. v. Miller,*
126 F.4th 445 (6th Cir. 2025) ..............................................48

**United States Constitution:**

U.S. CONST. Art. I, § 8, cl. 1...............................................3
U.S. CONST. amend. XVI ....................................................4

**Statutes:**                                                         **Page(s)**

Internal Revenue Code (26 U.S.C.):

§ 1 .......................................................................... 4

§ 11 ......................................................................... 4

§ 61(a) ..................................................................... 4

§ 170 ............................................................... 10, 33

§ 170(a)(1) ................................................ 4-5, 17, 64

§ 170(b)(1)(A)(vi) ........................................... 35, 57

§ 170(c) ................................................................ 22

§ 170(c)(2) ...................................................... 4-5, 64

§ 170(c)(2)(B) ..................................................... 6, 22

§ 170(c)(4) .............................................................. 4

§ 501(a) ......................................................... 17, 22

§ 501(c) ............................................................ 4, 24

§ 501(c)(3) ............................... 1-2, 4-8, 10-14, 17-26,
28-31, 33-39, 42-46, 50-53, 55-64

§ 501(c)(4) ........................... 4, 10-11, 13, 19-20, 22, 24-25,
29, 31-32, 39, 42-43, 46, 50-52

§ 506(a) ................................................................ 24

§ 507(d)(2) ...................................................... 36, 58

§ 507(d)(2)(A) .................................................. 7, 58

§ 508(a) ............................................................. 6, 40

§ 508(a)(1) ...................................................... 22, 39

§ 509(a) ............................................................. 6, 57

§ 509(a)(1) ...................................................... 35-36

§ 509(a)(2) ........................................................... 36

§ 509(a)(2)(A) .................................................. 7, 35

§ 509(a)(3) ........................................................... 36

§ 509(a)(3)(C) ................................................. 36, 58

§ 527 ............................................. 4, 11, 22, 25-26, 29

§ 527(i) ........................................................... 28, 30

§ 527(j) ........................................................... 25, 28

§§ 4940–4948 ........................................................ 6

§ 4946(a) ............................................................... 7

§ 4946(a)(1)(A) ........................................... 35-36, 57-58

**Statutes (cont'd):** Page(s)

Internal Revenue Code (26 U.S.C.) (cont'd):

§ 4958 ..................................................... 36, 57
§ 4958(c)(1)(A) .......................................... 57
§ 4958(c)(3)(A) .......................................... 57
§ 4958(c)(3)(B) ...................................... 37, 57
§ 4958(f)(1)(A) ................................... 36, 57, 59
§ 6033 ..................................................... 26, 35
§ 6033(a) .................................................. 54
§ 6033(a)(1) ............................................. 8, 42
§ 6033(a)(3) ............................................. 8, 58
§ 6033(a)(3)(A) ........................................ 11, 58
§ 6033(a)(3)(B) ........................................ 11, 58
§ 6033(b) .................................................. 64
§ 6033(b)(5) ................... 1-2, 7-8, 11, 13-15, 18-22, 26-27, 30, 32-34, 37-43, 45, 49, 51-56, 58, 61-63
§ 6033(b)(16) .............................................. 8
§ 6033(j)(1)(A) ........................................... 42
§ 6033(j)(1)(B) ........................................... 42
§ 6103 ..................................................... 61
§ 6103(a) .............................................. 11, 60
§ 6104(b) .............................................. 12, 60
§ 6104(d)(3) ........................................... 12, 60
§ 6652(c)(1)(A)(ii) ...................................... 42
§ 7213 ................................................. 12, 60
§ 7431 ................................................. 12, 60
§ 7601 ..................................................... 55
§ 7602 ..................................................... 55
§ 7602(a) .................................................. 64

28 U.S.C.:

§ 1292(b) ............................................. 1-3, 16
§ 1331 ...................................................... 1
§ 2201(a) ............................................... 1, 13

**Statutes (cont'd):**                                    **Page(s)**

Tariff Act of 1913, Pub. L. No. 63-16,
  38 Stat. 114.................................................................5-6
Tax Reform Act of 1969, Pub. L. No. 91-172,
  83 Stat. 487.................................................................7-9

**Rules and Regulations:**

Fed. R. App. P. 5 ..............................................................2

Treasury Regulations (26 C.F.R.):

  § 1.170A-9(f)(6)(i).....................................................35-36
  § 1.501(a)-1(c) .............................................................34
  § 1.501(c)(3)–1 .............................................................10
  § 1.501(c)(3)-1(d)(1)(ii) ..............................................34
  § 1.501(c)(3)-1(d)(2) ...................................................10
  § 1.501(c)(4)-1(a)(2) ...................................................10
  § 1.6033-2(a) ................................................................11
  § 1.6033-2(a)(2)(ii)(F) (1971) ....................................11
  § 1.6033-2(a)(2)(iii)(A) ............................................58-59
  § 1.6033-2(a)(2)(iii) .......................................................7
  § 1.6033-2(g) ................................................................58
  § 1.6033-2(g)(1) ...........................................................39
  § 1.6033-2(g)(1)(iii) .................................................11, 58
  § 53.4958-3(e)(2)(ii) ................................................37, 57

**Legislative History:**

H.R. Rep. 91-413 (1969), *reprinted in* 1969
  U.S.C.C.A.N. 1645...................................8-9, 34-35, 53, 56, 62

S. Rep. 91-552 (1969), *reprinted in*
  1969 U.S.C.C.A.N. 2027.......................................10, 56, 62-63

**Other Authorities:**

85 Fed. Reg. 31959 (May 28, 2020) ................................11

**Other Authorities (cont'd):**                               **Page(s)**

Philip Hackney, *The 1969 Tax Reform Act & Charities: Fifty Years Later*, 17 PITT. TAX. REV. 235 (2020) ................53

Joint Committee on Taxation, *General Explanation of the Tax Reform Act of 1969*, JCS-16-70 (Dec. 3, 1970) ......................54

Joint Committee on Taxation, *Overview of the Tax Gap*, JCX-19-19 (May 8, 2019) ........................................................37

Joint Committee on Taxation, *Estimates of Federal Tax Expenditures for Fiscal Years 2024–2028*, JCX-48-24 (Dec. 11, 2024) .........................................................................24, 34

Leandra Lederman, *Reducing Information Gaps to Reduce the Tax Gap: When Is Information Reporting Warranted?*, 78 FORDHAM L. REV. 1733 (2010)....................................23, 37

Kenneth Liles & Cynthia Blum, *Development of the Federal Tax Treatment of Charities – A Prelude to the Tax Reform Act of 1969*, 39 LAW & CONTEMP. PROBS. 6 (Autumn 1975) ..........................................5

Kathleen Thomas, *User-Friendly Taxpaying*, 92 IND. L.J. 1509 (2017) ...................................................23, 37

Donald B. Tobin, *Anonymous Speech and Section 527 of the Internal Revenue Code*, 37 GA. L. REV. 611 (2003) ........................................................26

## STATEMENT REGARDING ORAL ARGUMENT

This appeal concerns a legal issue of first impression of nationwide interest.  Counsel for the United States believe that oral argument would be beneficial.

# JURISDICTIONAL STATEMENT

## A.    District Court jurisdiction

Buckeye Institute ("Buckeye") brought this suit challenging, on First Amendment grounds, the requirement in § 6033(b)(5) of the Internal Revenue Code (26 U.S.C.) ("I.R.C.") that certain organizations that are tax exempt under I.R.C. § 501(c)(3) annually report "the total of the contributions and gifts received by [the organization] during the year, and the names and addresses of all substantial contributors." I.R.C. § 6033(b)(5).  (Complaint, RE 1, PageID # 1–12.)  Buckeye invoked the District Court's jurisdiction under 28 U.S.C. § 1331 and stated that it was bringing suit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  (*Id.* PageID # 3, 10.)

## B.    Appellate jurisdiction

On November 9, 2023, the District Court entered an opinion and order denying the parties' cross-motions for summary judgment and denying as moot the Government's motion to dismiss.  (Opinion, RE 60, PageID # 843–855.)  The Government moved the District Court to certify the order for immediate appeal.  (Motion to Certify, RE 71, PageID # 908–924.)  On February 26, 2024, the District Court granted this motion, holding that the requirements of 28 U.S.C. § 1292(b) were

met and certifying the order for immediate appeal. (Order Certifying, RE 73, PageID # 928–931.) On March 7, 2024, the Government filed a timely petition in this Court for permission to appeal pursuant to 28 U.S.C. § 1292(b) and Fed. R. App. P. 5. On March 14, 2025, this Court granted the Government's petition. (6th Cir. No. 24-0301, RE 11.)

## STATEMENT OF THE ISSUE

Organizations that choose to claim tax-exempt status under § 501(c)(3) of the Internal Revenue Code are subject to certain requirements, including that many must report their substantial contributors to the IRS under § 6033(b)(5). The primary issue on appeal is whether a First Amendment challenge to that reporting requirement should be evaluated under the rational-basis standard as a condition on a government subsidy (as the Government maintains) or under the exacting-scrutiny standard as a compelled disclosure (as the District Court held).

## STATEMENT OF THE CASE

### A. Procedural overview

Buckeye brought this action challenging the requirement in § 6033(b)(5) that certain tax-exempt entities under § 501(c)(3) report annually the names and addresses of their substantial contributors,

alleging that it violates Buckeye's First Amendment rights of association and assembly.  (Complaint, RE 1, PageID # 1–12.)  The Government moved to dismiss the suit, and the parties filed cross-motions for summary judgment.  (MTD, RE 21, PageID # 56–85; Buckeye MSJ, RE 36, PageID # 165–184; Gov't MSJ, RE 43, PageID # 474–498.)  The District Court denied both parties' summary judgment motions and denied as moot the Government's motion to dismiss. (Opinion, RE 60, PageID # 843–855.)  Upon unopposed motion by the Government, the District Court certified the order for immediate appeal under 28 U.S.C. § 1292(b).  (Order Certifying, RE 73, PageID # 928– 931.)  This Court then granted the Government's petition for appeal of the District Court's order.  (6th Cir. No. 24-0301, RE 11.)

## B.  Legal background

### 1.  Tax deductions and exemptions generally

The United States Constitution empowers Congress "[t]o lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. CONST. Art. I, § 8, cl. 1.  Not only does this Clause "provide[] Congress broad discretion to tax and spend," but it also "includes the

authority to impose limits on the use of such funds to ensure they are used in the manner Congress intends." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013).

The Constitution also authorizes a general income tax and does not dictate any exemptions or deductions. U.S. CONST. amend. XVI. Consistent with this authorization and Congress's taxing power, Congress has imposed on individuals and corporations a tax on "all income from whatever source derived." I.R.C. § 61(a); *see* I.R.C. §§ 1, 11.

For policy reasons, Congress has exempted certain charitable (§ 501(c)(3)), social welfare (§ 501(c)(4)), and political (§ 527) entities from federal taxation. It also has allowed contributors to § 501(c)(3) organizations, in turn, to deduct the amount of their contributions from their income taxes.[1] I.R.C. § 170(a)(1) & (c)(2). Such deductions and exemptions are, effectively, a "subsidy that is administered through the tax system." *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 544 (1983). An exemption's effect is "much the same . . . as a

---

[1] Certain other § 501(c) organizations also qualify for tax-deductible contributions. *See* I.R.C. § 170(c)(4) (fraternal societies), (c)(5) (cemetery companies), (c)(6) (veterans' organizations).

cash grant to the organization of the amount of tax it would have to pay on its income." *Id.* Likewise, "[d]eductible contributions are similar to cash grants of the amount of a portion of the individual's contributions." *Id.*

### 2. Organizations opting to be exempt from tax under § 501(c)(3)

Congress bestowed a special status upon organizations that are "operated exclusively" for religious, charitable, scientific, literary, or educational purposes, and that do not engage in political campaigns or "substantial" lobbying activities. I.R.C. § 501(c)(3).[2] Not only are organizations that have been granted § 501(c)(3) status tax exempt, but also donors may deduct the amount of their charitable donations to § 501(c)(3) organizations from their income tax (§ 170(a)(1) & (c)(2)). If an entity is organized or operated for other, nonexempt purposes, or

---

[2] These tax benefits are as old as the federal income-tax laws themselves. *See generally* Kenneth Liles & Cynthia Blum, *Development of the Federal Tax Treatment of Charities – A Prelude to the Tax Reform Act of 1969*, 39 LAW & CONTEMP. PROBS. 6 (Autumn 1975). The origin of statutory exemptions for organizations "operated exclusively for religious, charitable, scientific, or educational purposes" dates back to the Tariff Act of 1913, contemporaneous with the ratification of the Sixteenth Amendment, and variations on this language appeared in legislation years before that. Ch. 16, § II(G)(a), 38 Stat. 114, 172 (1913).

participates or intervenes in a political campaign on behalf of (or in opposition to) a candidate for public office, or engages in lobbying as a "substantial part" of its activities, it does not qualify for exemption under § 501(c)(3), and contributions to it are not deductible. I.R.C. §§ 501(c)(3), 170(c)(2)(B). Nor does the organization qualify if any of its net earnings "inures to the benefit of any private shareholder or individual," including its contributors.[3] I.R.C. § 501(c)(3).

To obtain those tax subsidies, an organization generally must apply for § 501(c)(3) status. I.R.C. § 508(a). Tax-exempt organizations under § 501(c)(3) fall into two general types: public charities and private foundations. Private foundations are subject to additional restrictions not applicable to public charities. *See* I.R.C. §§ 4940–4948. A § 501(c)(3) organization is considered a "private foundation" unless it meets certain requirements to be deemed a public charity. I.R.C. § 509(a). One way to be classified as a public charity is to receive a significant portion of its support from the general public, and not only

---

[3] The prohibition against private inurement has been a central component of § 501(c)(3) and its predecessors for more than 100 years. *See* Ch. 16, § II(G)(a), 38 Stat. 114, 172 (1913) ("no part of the net income . . . inures to the benefit of any private stockholder or individual.").

from a small group of "substantial contributors" who are "disqualified persons" for purposes of the public charity/private foundation test. I.R.C. §§ 509(a)(2)(A), 4946(a). A "substantial contributor" is "any person who contributed . . . more than $5,000 to the private foundation, if such amount is more than 2 percent of the total contributions and bequests received by the foundation before the close of the taxable year of the foundation in which the contribution or bequest is received . . . ."[4] I.R.C. § 507(d)(2)(A).

### 3. The substantial-contributor reporting requirement in § 6033(b)(5)

The substantial-contributor reporting requirement at issue in this case was enacted more than fifty years ago as part of a major tax reform. In 1969, Congress overhauled the Internal Revenue Code provisions applicable to § 501(c)(3) organizations to ensure that funds contributed to such organizations were used for charitable purposes as opposed to private inurement or other improper purposes. Tax Reform Act of 1969, Pub. L. No. 91-172, § 201, 83 Stat. 487, 549. The substantial-contributor reporting requirement, codified at I.R.C.

---

[4] Different thresholds for reporting contributors may apply under § 6033(b)(5). 26 C.F.R. (Treas. Reg.) § 1.6033-2(a)(2)(iii).

§ 6033(b)(5), was a component of this legislation. *Id.* § 101(d)(2)(C), 83 Stat. at 520. Section 6033(b)(5) requires that a § 501(c)(3) organization report "the total of the contributions and gifts received by it during the year, and the names and addresses of all substantial contributors." I.R.C. § 6033(b)(5). Churches and smaller charities do not need to comply with this requirement. I.R.C. § 6033(a)(3). The statute explains that Congress requires § 501(c)(3) organizations to report this information "for purposes of carrying out the internal revenue laws," including the prohibition on private inurement and other limitations on the use of a § 501(c)(3)'s publicly subsidized funds. I.R.C. § 6033(b)(16); *see generally* I.R.C. § 6033(a)(1).

The legislation was designed to address rampant abuse of the § 501(c)(3) tax exemption. H.R. Rep. No. 91-413 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1645, 1645–1646; *see Quarrie v. Commissioner*, 603 F.2d 1274, 1277 (7th Cir. 1979) ("[The 1969] reforms were prompted by Congressional concern over widespread abuses of the tax-exempt status of private foundations."). The new information reporting requirements were geared toward "provid[ing] the Internal Revenue Service with information needed to enforce the tax laws," underscoring that "more

information is needed, on a more current basis, from more organizations

. . . ." H.R. Rep. No. 91-413, at 36 (1969), *reprinted in* 1969

U.S.C.C.A.N. 1645, 1681. The House Report explained that "there will

have to be shown on each information return *the names and addresses*

*of all substantial contributors*, directors, trustees, and other

management officials—*all of whom are 'disqualified persons' for*

*purposes of the new self-dealing rules and other provisions*—and of

highly compensated employees."[5] *Id.* (emphasis added); *see*

§ 101(d)(2)(C), 83 Stat. at 520. Separately, the Senate Finance

Committee modified the requirement that substantial contributors be

disclosed to the public so that public charities were required to disclose

their substantial contributors only to the IRS, reasoning that "some

donors prefer to give anonymously" and "[t]o require public disclosure in

---

[5] The 1969 Tax Reform Act's legislative history demonstrates Congress's interest in tightening the restrictions on private foundations to prevent them from profiting wealthy donors rather than benefiting the general public. 1969 U.S.C.C.A.N. 1645, 1663–1675. For these reasons, the statute added, among other things, prohibitions against self-dealing, requirements that private foundations make minimum charitable distributions, and restrictions on foundations' ability to hold significant interests in private businesses. *Id.* And it prohibited private foundations from transferring assets to disqualified persons, including substantial contributors. *Id.* at 1665.

these cases might prevent the gifts." S. Rep. 91-552, at 53 (1969),
*reprinted in* 1969 U.S.C.C.A.N. 2027, 2080–2081.

If a new charitable organization does not want to comply with the
substantial-contributor reporting condition or other conditions to
§ 501(c)(3) status, it instead can choose to be a taxable organization.
Alternatively, a new organization that wants to be tax exempt but does
not want to report substantial contributors can opt for § 501(c)(4)
status. Organizations that qualify as § 501(c)(3) organizations
generally also would qualify as § 501(c)(4) organizations. *See* 26 C.F.R.
(Treas. Reg.) § 1.501(c)(3)-1(d)(2) ("The term charitable . . . includes . . .
promotion of social welfare"); *see also* Treas. Reg. § 1.501(c)(4)-1(a)(2)
("A social welfare organization will qualify for exemption as a charitable
organization if it falls within the definition of charitable set forth in
paragraph (d)(2) of § 1.501(c)(3)–1 and is not an action organization as
set forth in paragraph (c)(3) of § 1.501(c)(3)–1."). Contributions to
§ 501(c)(4) organizations, however, are not deductible under I.R.C.
§ 170. An existing § 501(c)(3) organization that does not want to report
substantial contributors may operate with a dual structure, as a
§ 501(c)(3) organization with a § 501(c)(4) affiliate, which would allow

substantial contributors to contribute to the § 501(c)(4) affiliate rather than the § 501(c)(3) organization (and thereby avoid being included in the § 501(c)(3) organization's § 6033(b)(5)'s reporting).

### 4. IRS disclosure of substantial contributors is strictly prohibited

The IRS has implemented the substantial-contributor reporting requirement by requiring § 501(c)(3) organizations to provide the names and addresses of substantial contributors on Schedule B to IRS Form 990.[6]  Treas. Reg. § 1.6033-2(a).  Although most information submitted by exempt organizations on their Forms 990 must be made publicly available, federal law prohibits the disclosure of the names and addresses of substantial contributors (except in the case of private foundations and § 527 political organizations).[7]  I.R.C. §§ 6103(a),

---

[6] Certain organizations are exempt from filing the Form 990 (including Schedule B), such as public charities (other than supporting organizations) with gross receipts of $50,000 or less.  *See* I.R.C. § 6033(a)(3)(A) (mandatory exceptions), (a)(3)(B) (discretionary exceptions); *see also* Treas. Reg. § 1.6033-2(g)(1)(iii) ($50,000 exception).

[7] The Treasury Department previously issued regulations requiring other tax-exempt organizations to report their substantial contributors.  *See* Treas. Reg. 1.6033-2(a)(2)(ii)(F) (1971).  That requirement was eliminated after Treasury determined that, for those other entities, the information was not necessary for efficient tax administration.  85 Fed. Reg. 31959, 31963 (May 28, 2020).

6104(b) & (d)(3).  Wrongful disclosure of such information by the IRS

can subject the discloser to criminal penalties and the United States to

civil liability.  I.R.C. §§ 7213, 7431.

## C.     Buckeye and its tax-exempt status

In 1989, Buckeye was founded and opted to organize and operate

as a § 501(c)(3) organization and, as such, became subject to the Code's

conditions for that tax-exempt status, including the substantial-

contributor reporting requirement.  (Amended Complaint, RE 68,

PageID # 879; Alt Decl., RE 36-1, PageID # 185-186.)  Buckeye has

complied with that requirement since its founding.  (Alt Decl., RE 36-1,

PageID # 186.)  It describes its mission as "seek[ing] to promote limited

and effective government and individual freedom through policy

research and advocacy, often serving as a government watchdog and

litigating to defend constitutional rights."  (Amended Complaint, RE 68,

PageID # 879.)

## D.     The District Court proceedings

In 2022, Buckeye brought this suit alleging that the substantial-

contributor reporting requirement "violates the First Amendment rights

of association and assembly of Buckeye and its supporters."  (*Id.*)

Invoking the Declaratory Judgment Act, 28 U.S.C. § 2201(a), Buckeye's complaint seeks a declaration that the substantial-contributor reporting requirement "violates the First Amendment, both on its face and as applied to Buckeye," and an injunction barring the IRS from requiring that Buckeye report its substantial contributors' names and addresses. (*Id.* PageID # 888.)

The Government moved to dismiss the complaint for lack of standing and failure to state a claim. (Gov't MTD, RE 21, PageID # 56–85.) It argued that § 6033(b)(5)'s reporting requirement does not violate the First Amendment, because it is a condition on a tax subsidy and is rationally related to the subsidy. (*Id.* PageID # 68–76.) To support this argument, the Government relied on the Supreme Court's decision in *Regan*, which held that § 501(c)(3)'s prohibition on substantial lobbying does not violate the First Amendment because it is a reasonable condition on a voluntary subsidy, and because the organization could separately establish a § 501(c)(4) affiliate to engage in lobbying and therefore was not prohibited from lobbying altogether. (*Id.* PageID # 69–70, 77–78 (citing *Regan*, 461 U.S. at 542–551).)

 Buckeye opposed dismissal and moved for summary judgment. (Buckeye Opp. to MTD, RE 35, PageID # 140–164; Buckeye MSJ, RE 36, PageID # 165–184.)  It relied on *Americans for Prosperity Foundation v. Bonta ("AFP")*, 594 U.S. 595 (2021), which applied exacting scrutiny to reject California's requirement that charitable organizations disclose their substantial contributors in order to operate in the state.  Buckeye argued that § 6033(b)(5)'s substantial-contributor reporting requirement is likewise subject to exacting scrutiny as a compelled disclosure.  (Buckeye Opp. at PageID # 140; Buckeye MSJ at PageID # 175–176.)

The Government cross-moved for summary judgment, arguing that the substantial-contributor reporting requirement is not a compelled disclosure because opting for § 501(c)(3) status is voluntary and because the reporting is rationally related to the tax benefit.  (Gov't MSJ, RE 43, PageID # 478–480.)  The Government underscored the distinction drawn by the Supreme Court in *AFP*, 594 U.S. at 618 (citing *Regan*): "[R]evenue collection efforts and conferral of tax-exempt status may raise issues not presented by California's disclosure requirement, which can prevent charities from operating in the State altogether."

(*Id.* at PageID # 494.) The Government further argued that, even if the court were to apply exacting scrutiny, § 6033(b)(5) would nonetheless be constitutional because it serves the important governmental interest of maintaining a sound tax system, and because it is substantially related to the proper functioning of the income tax system. (*Id.* at PageID # 480–485.)

### E.     The District Court's opinion and order

The District Court denied both parties' motions for summary judgment. (Opinion, RE 60, PageID # 843–855.) The court held that Buckeye had standing and, on the merits, viewed *AFP*'s "exacting scrutiny" as the governing standard. (*Id.* at PageID # 852 (citing *AFP*, 594 U.S. at 608).) The court recognized that *Regan* held that "tax exemptions and tax-deductibility are a form of subsidy" and that Congress could decide not to fund First Amendment activities without running afoul of the First Amendment. (*Id.* at PageID # 852 (quoting *Regan*, 461 U.S. at 544–46).) But the court reasoned that cases since *Regan*, including *AFP*, have "developed on these rules." (*Id.* at PageID # 852.) The court then fashioned the following rule:

> Congress may, without offending the First Amendment,
> condition benefits for *programs* or *activities* on compliance

with restrictions on First Amendment activities, but if
Congress denies a benefit because an *organization* will not
comply with a restriction on First Amendment activities,
that denial may be unconstitutional.

(*Id.* PageID # 852–853 (emphasis in original).) The court cited *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 218 (2013), and *Rust v. Sullivan*, 500 U.S. 173, 195–200 (1991), as examples. It reasoned that because "the Government denies its 501(c)(3) tax benefits entirely to organizations that resist the disclosure requirement[,] . . . if the Disclosure Requirement is unconstitutional, it would be an unconstitutional condition on the receipt of the tax benefits." (Opinion, RE 60, PageID # 853 (citing *Rust*, 500 U.S. at 196–97).) The court then determined that it would "review the constitutionality of the Disclosure Requirement under exacting scrutiny," and concluded that a genuine issue of material fact exists rendering summary judgment inappropriate. (*Id.* at PageID # 854.)

In a subsequent order, on the unopposed request by the Government, the District Court amended its order denying summary judgment to include a certification, pursuant to 28 U.S.C. § 1292(b), for interlocutory appeal. (Order Certifying, RE 73, PageID # 928–931.)

# SUMMARY OF ARGUMENT

The federal tax system is rooted in principles of self-assessment and voluntary compliance. Tax deductions and exemptions are gestures of legislative grace. Section 501(c)(3) charitable organizations enjoy a relief from tax that is twofold: the organization is exempt from federal tax pursuant to § 501(a), and its contributors may receive a charitable contribution deduction pursuant to § 170(a)(1), thereby reducing the contributors' income tax liability. To achieve and maintain this status, the organization must fulfill certain requirements reasonably related to the § 501(c)(3) regime. Section 6033(b)(5) is one of those conditions and generally requires public charities to annually report to the IRS on a confidential basis the names and addresses of their substantial contributors, thereby enabling the IRS to properly administer and supervise both the organization's tax exemption and the contributors' charitable contribution deductions. The District Court erred in holding that a First Amendment challenge to this requirement should be evaluated under the exacting-scrutiny standard as a compelled disclosure rather than under the rational-basis standard applicable to conditions on voluntary government subsidies.

1.     Section 6033(b)(5)'s substantial-contributor reporting requirement is a condition on the receipt of a subsidy under the Internal Revenue Code.  As held in *Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983), that subsidy takes the form of tax exemptions and deductibility, and any organization can avoid the reporting condition by choosing to forgo the subsidy. Heightened scrutiny therefore does not apply.  *See id.* at 545–51. Rather, such a condition may be upheld so long as it is reasonable and does not reach outside the federal tax-subsidy program.

The federal reporting requirement satisfies those criteria. Reporting a charitable organization's significant contributors to the IRS is reasonably related to the IRS's administration of tax-subsidy laws that apply to § 501(c)(3) organizations.  Indeed, Congress specifically added the reporting requirement almost 60 years ago in order to facilitate meaningful enforcement of new rules regulating organizations that choose to claim tax-exempt status under § 501(c)(3).  The IRS thus properly collects substantial-contributor information as part of its administration of the federal tax-subsidy program, and the federal reporting provision is constitutional.  As in *Regan*, Buckeye could create

a § 501(c)(4) affiliate, to which contributors could donate and not be subject to § 6033(b)(5)'s reporting requirement. This readily available alternative assuages any potential burden on Buckeye's constitutional rights.

2.    The District Court erred in discarding *Regan*'s analysis, which governs this issue concerning § 501(c)(3), in favor of applying exacting scrutiny as in *AFP*. *AFP*'s holding—that the compelled disclosure of a charitable organization's major donors in order to operate and solicit contributions in California was subject to exacting-scrutiny review—is inapposite here. Indeed, the Supreme Court explicitly distinguished § 6033(b)(5)'s federal tax-reporting requirement as a "condition of federal tax-exempt status," and noted that "revenue collection efforts and conferral of tax-exempt status may raise issues not presented by California's disclosure requirement, which can prevent charities from operating in the State altogether." 594 U.S. 595, 618 (2021) (citing *Regan*, 461 U.S. at 545). And those different issues are apparent here. Section 6033(b)(5) applies only to organizations like Buckeye that are seeking federal tax subsidies in the form of tax exemption and charitable deductions. Organizations that fail to comply

with § 6033(b)(5)'s reporting requirement do not lose the ability to operate or solicit contributions (as was the case in *AFP*); they merely face possible tax consequences. Accordingly, the District Court erred in treating § 6033(b)(5)'s reporting requirement as a compelled disclosure because Buckeye voluntarily opted into the federal subsidy program for organizations with § 501(c)(3) status, and if it wishes to refrain from reporting its substantial contributors, it could form a § 501(c)(4) affiliate. The availability of that alternative highlights that the reporting requirement is a condition of a voluntary, opt-in regime, not a compelled disclosure.

3. In any event, even under an exacting-scrutiny analysis, § 6033(b)(5)'s substantial-contributor requirement is constitutional as a matter of law. The requirement substantially relates to the government's interest in revenue collection and enforcement of the Internal Revenue Code's charitable exemption laws. Indeed, Congress implemented this requirement in 1969 as part of an overhaul of the laws surrounding the § 501(c)(3) tax exemption after observing widespread abuse of the charitable exemption for non-charitable purposes. Moreover, the reporting requirement itself is narrowly

tailored. Because it is limited to substantial contributors, it serves as a diagnostic snapshot for a limited subset of § 501(c)(3) organizations to show the donors who not only are in a position to exercise significant influence over the organization and thus are potential parties to impermissible private inurement, but also who may take significant charitable deductions.

The District Court's opinion and order should be reversed, and summary judgment should be entered in favor of the Government.

## ARGUMENT

### Section 6033(b)(5)'s substantial-contributor reporting requirement is a constitutional condition on an opt-in tax subsidy and as such does not infringe Buckeye's First Amendment rights

### Standard of review

When a district court denies summary judgment solely upon legal grounds, this Court "review[s] the denial de novo." *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004). This Court reviews a district court's finding that there exists a genuine issue of material fact for an abuse of discretion. *Id.*

## A.    Introduction

Congress provides generous tax benefits for organizations that qualify as § 501(c)(3) charitable organizations, exempting them from federal income tax, § 501(a), and allowing deductions to their contributors, § 170(c)(2)(B).  Other organizations may qualify for tax exemption but do not qualify for tax-deductible contributions, such as social welfare organizations under § 501(c)(4) or political organizations under § 527.

Organizations generally must notify the Secretary to be treated as tax exempt under § 501(c)(3).  *See* I.R.C. § 508(a)(1).  Entities that seek to be treated as tax exempt under § 501(c)(3) and to receive tax-deductible contributions under § 170(c) must accept certain limitations on their operations and comply with various reporting requirements. As relevant here, entities exempt under § 501(c)(3) generally are required by federal statute to file annual information returns with the IRS that report (among other items) "the names and addresses of all substantial contributors."  I.R.C. § 6033(b)(5).  This reporting fosters tax compliance and provides the IRS information it can use to confirm contributions to the tax-exempt organizations and to examine potential

improper dealings between tax-exempt organizations and their major contributors. *See, e.g.*, Leandra Lederman, *Reducing Information Gaps to Reduce the Tax Gap: When Is Information Reporting Warranted?*, 78 FORDHAM L. REV. 1733, 1735 (2010) ("[A]ny information that the taxpayer knows the government has about the taxpayer's activities will foster honesty."); *see also* Kathleen Thomas, *User-Friendly Taxpaying*, 92 IND. L.J. 1509, 1533–1535 (2017) (explaining how third-party reporting (such as that required on the Schedule B form) is its own form of enforcement).

It is well established that the § 501(c)(3) framework of "tax exemptions and tax-deductibility are a form of subsidy that is administered through the tax system." *Regan*, 461 U.S. at 544. Tax exemptions operate as "a cash grant to the organization of the amount of tax it would have to pay on its income." *Id.* In turn, "[d]eductible contributions are similar to cash grants of the amount of a portion of the individuals' contributions." *Id.* Accordingly, such tax exemptions and deductions are "a matter of grace [that] Congress can, of course, disallow . . . as it chooses." *Id.* at 549 (quoting *Commissioner v. Sullivan*, 356 U.S. 27, 28 (1958)). Indeed, the charitable contribution

deduction alone is one of the largest tax expenditures in the entire federal government. The Joint Committee on Taxation estimates that charitable contribution deduction expenditures will total more than $400 billion from 2024 through 2028. Joint Committee on Taxation, *Estimates of Federal Tax Expenditures for Fiscal Years 2024–2028* ("Joint Committee Estimates"), JCX-48-24, at 30–32 (Dec. 11, 2024).

Claiming federal subsidies related to tax-exempt status under § 501(c)(3) is wholly voluntary. Nonprofits can freely operate without claiming any tax-exempt status under § 501(c) and thereby avoid the Internal Revenue Code's requirements for such entities, including the requirement to provide information to the IRS to allow it to properly administer the benefits of tax exemption. Alternatively, a nonprofit that wants the benefit of tax-exempt status without having to report its substantial contributors to the IRS can opt to be treated as exempt under § 501(c)(4) by notifying the Secretary. *See* I.R.C. § 506(a). Or it can operate in dual status as a § 501(c)(3) organization with an affiliated § 501(c)(4) organization. *See Regan*, 461 U.S. at 544. The dual-status structure would allow donors who wanted to avoid the substantial-contributor reporting requirement to contribute to the

§ 501(c)(4) organization rather than to the § 501(c)(3) organization. And donors contributing to the § 501(c)(3) organization may enjoy the tax-deduction subsidy.

The Supreme Court has repeatedly held that restrictions tied to federal tax subsidies do not "infringe" First Amendment rights. *Regan*, 461 U.S. at 549–50 (rejecting First Amendment challenge to § 501(c)(3)'s restriction on lobbying); *see Cammarano v. United States*, 358 U.S. 498, 513 (1959) (rejecting First Amendment challenge to Treasury regulations prohibiting deductions for lobbying expenses); *Lewis Publ'g Co. v. Morgan*, 229 U.S. 288, 303–04 (1913) (rejecting First Amendment challenge to a discounted postal rate that was conditioned on the recipient's making certain public disclosures). This principle has been applied to a federal-reporting requirement similar to the one at issue here. *See Mobile Republican Assembly v. United States*, 353 F.3d 1357, 1361 (11th Cir. 2003) (considering constitutionality of § 527(j)'s contributor reporting requirement for § 527 tax-exempt organizations and reasoning that "section 527(j) falls squarely under *Regan*" in that "Congress has established certain requirements that must be followed in order to claim the benefit of a public tax subsidy"). As these decisions

demonstrate, Congress's "conferral of tax-exempt status [or other tax benefits] is not a right, but a privilege that the Government may condition upon meeting certain requirements." Donald B. Tobin, *Anonymous Speech and Section 527 of the Internal Revenue Code*, 37 GA. L. REV. 611, 672 (2003).

Consistent with the Eleventh Circuit's analysis in *Mobile Republican*, the constitutionality of § 6033(b)(5) should be controlled by *Regan*'s rational-basis review and easily passes muster under that standard. *See*, below, §§ B-C. The reporting provisions of § 6033 are a permissible condition established by Congress for the receipt of a federal subsidy in the form of a tax exemption for the organization and a charitable deduction for the contributor. An organization may choose to avoid the reporting requirement by forgoing exemption (and deductibility for its donors), but one that chooses the § 501(c)(3) exemption (and deductibility) thereby agrees to be bound by the conditions that Congress has set. *See Rust*, 500 U.S. at 177, 199 n.5 (holding that a regulation that prohibited abortion counseling by doctors who chose to receive federal subsidies does not violate the First Amendment, and observing that "[w]e have never held that the

Government violates the First Amendment simply by offering [a]

choice").

The District Court erred in imposing *AFP*'s exacting-scrutiny

standard for compelled disclosures rather than *Regan*'s rational-basis

standard for conditions on voluntary government subsidies. *See*, below,

§ D. In any event, § 6033(b)(5)'s substantial-contributor reporting

requirement satisfies the exacting-scrutiny standard as a matter of law.

*See*, below, § E. Thus, the District Court's denial of summary judgment

in favor of the Government should be reversed, and summary judgment

should instead be entered in the Government's favor.

**B.** **Rational-basis review is the proper level of scrutiny,
in accordance with the Supreme Court's analysis in
*Regan***

As in *Mobile Republican*, *Regan*'s rational-basis review is

appropriate here. "As a general matter, if a party objects to a condition

on the receipt of federal funding, its recourse is to decline the funds,"

even if "the objection is that a condition may affect the recipient's

exercise of its First Amendment rights." *Agency for Int'l Dev.*, 570 U.S.

at 214. *E.g., United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 212

(2003) (rejecting a claim by public libraries that conditioning funds for

Internet access on the libraries' installing filtering software violated

their First Amendment rights, because "[t]o the extent that libraries

wish to offer unfiltered access, they are free to do so without federal

assistance"); *Regan*, 461 U.S. at 546 (dismissing "the notion that First

Amendment rights are somehow not fully realized unless they are

subsidized by the State"); *Mobile Republican*, 353 F.3d at 1361

(rejecting First Amendment challenge to I.R.C. § 527(j)'s contributor

reporting requirement because "[a]ny political organization

uncomfortable with the disclosure of expenditures or contributions may

simply decline to register under section 527(i) and avoid these

requirements altogether").

The Supreme Court's decision in *Regan* is particularly instructive.

There, the Court upheld a requirement that organizations that enjoy

tax-exempt status under § 501(c)(3) refrain from lobbying activities.

*Regan*, 461 U.S. at 545. The Court determined that, although lobbying

is protected by the First Amendment, the government does "not

infringe[] any First Amendment rights or regulate[] any First

Amendment activity" when it denies tax-exempt status to organizations

engaged in lobbying because "Congress is not required by the First

Amendment to subsidize lobbying" through tax exemptions and deductions. *Id*. at 546. The Court further explained that an organization that wishes to engage in substantial lobbying and yet retain its § 501(c)(3) status could lobby through an affiliated § 501(c)(4) organization. *Id*. at 544. Accordingly, Congress's decision to impose a viewpoint-neutral condition on the receipt of a governmental subsidy was subject to rational-basis review rather than a higher level of "scrutiny," *id*. at 548–49, even if, by choosing to accept the subsidy, the recipient "cannot exercise its freedom of speech as much as it would like," *id*. at 550.

The Eleventh Circuit has applied *Regan*'s reasoning to a federal reporting requirement like the one at issue here. *See Mobile Republican*, 353 F.3d 1357. In *Mobile Republican*, the court addressed a First Amendment challenge to the contributor-disclosure requirement that applies to organizations claiming tax-exempt status under § 527. The Eleventh Circuit concluded that the requirement is "no barrier" to the exercise of First Amendment associational rights, only a condition "that must be followed in order to claim the benefit of a public tax subsidy" and any "organization uncomfortable with the disclosure"

may "simply decline to register [for tax exemption] under section 527(i) and avoid these requirements altogether." *Mobile Republican*, 353 F.3d at 1361. The decision in *Mobile Republican* thus illustrates this critical distinction between compelled disclosure and disclosure as a condition on a voluntary subsidy.

In this case, Buckeye claims that § 6033(b)(5)'s substantial-contributor reporting requirement is a compelled disclosure that violates its First Amendment associational rights. But as was the case in *Mobile Republican*, Buckeye is not compelled to make disclosures that it asserts violate its First Amendment rights; rather, it has chosen to accept the government subsidies that flow from being a tax-exempt organization described in § 501(c)(3), and therefore must comply with a disclosure condition tied to that subsidy. If Buckeye objects to that condition on the receipt of federal subsidies, its recourse is to decline the subsidy, even if Buckeye believes the condition violates its "First Amendment freedom to associate and assemble privately." (Amended Complaint, RE 68, PageID # 885.) *See Agency for Int'l Dev.*, 570 U.S. at 214; *see also Grove City Coll. v. Bell*, 465 U.S. 555, 575 (1984) (rejecting a First Amendment challenge to a condition on financial assistance

because the petitioner could "terminate its participation in the [federal] program and thus avoid [its] requirements").

Moreover, Buckeye can avail itself of the dual-organization structure blessed by the Supreme Court in *Regan*. As noted above, the Court there relied on the fact that the organization could use a "dual structure," operating "with a § 501(c)(3) organization for non-lobbying activities and a § 501(c)(4) organization for lobbying." *Id.* at 544. Such a structure was not "unduly burdensome" and did not deny the organization (TWR) a benefit because it intended to lobby. *Id.* at 544 n.6; *see id.* at 549 ("[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right."); *see also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 445 (2020) (Breyer, J., dissenting) (describing the option of creating a dual structure in *Regan* and noting that "[t]he condition was thus constitutional, even though it essentially compelled the nonprofit to affiliate with other organizations").

Although "compelled disclosure of affiliation with groups engaged in advocacy may constitute . . . a restraint on freedom of association," *AFP*, 594 U.S. at 606 (quoting *NAACP v. Alabama ex rel. Patterson*, 357

-32-

U.S. 449, 462 (1958)), this case involves an opt-in tax subsidy, not a compelled disclosure. The Supreme Court recognized this distinction in *AFP*. 594 U.S. at 618 (citing *Regan*). As the Court there explained, "conferral of tax-exempt status may raise issues not presented by California's disclosure requirement, which can prevent charities from operating in the State altogether." *Id*. Unlike the California regulation at issue in *AFP* (where disclosure was a compulsory requirement to operate and solicit contributions in the state), § 6033(b)(5)'s reporting requirement does not restrain Buckeye or its contributors from freely and anonymously associating when not subsidized by the federal government. Indeed, there is no restriction on association even when a tax subsidy is provided, because Buckeye could establish a § 501(c)(4) affiliate that could receive contributions that would not be subject to § 6033(b)(5). Because the reporting in this case is not compelled, exacting scrutiny does not apply.

**C.** **Section 6033(b)(5)'s substantial-contributor reporting requirement is a constitutional condition on the receipt of a tax subsidy and easily satisfies rational-basis review**

A condition to a government subsidy should be upheld as long as there is a "rational basis" for the requirement, *Ysursa v. Pocatello Educ.*

*Ass'n*, 555 U.S. 353, 359–60 (2009); *Rust*, 500 U.S. at 197; *Regan*, 461 U.S. at 550–51, and the condition does not "reach outside" the federal tax-subsidy program, *Agency for Int'l Dev.*, 570 U.S. at 217. *See Ostergren v. Frick*, 856 F. App'x 562, 571 (6th Cir. 2021) ("In assessing a challenged condition, it is relevant to ask whether the condition directly relates to the benefit offered or instead 'reaches beyond' that benefit to regulate unrelated constitutional rights."). The reporting requirement satisfies that standard, as demonstrated below.

### 1. Reporting of substantial contributors directly relates to the government's administration of the § 501(c)(3) regime

The substantial-contributor reporting requirement directly relates to the IRS's administration of the § 501(c)(3) regime, including the related charitable contribution deduction under § 170. It provides a snapshot of critical information for enforcement of the Code's anti-self-dealing rules and other statutory restrictions on § 501(c)(3)'s, and for confirming the propriety of charitable deductions taken by substantial contributors. In fact, Congress specifically added the § 6033(b)(5) reporting requirement to "facilitate meaningful enforcement" of "new

self-dealing rules and other provisions" limiting tax-exempt

organizations under § 501(c)(3).  1969 U.S.C.C.A.N. 1645, 1681.

Section 6033(b)(5)'s reporting requirement is closely tied to

Congressional limitations on the § 501(c)(3) regime.  At its most basic

level, reporting substantial contributors to the IRS serves to confirm

that those who are claiming large charitable-contribution deductions on

their income tax returns actually made the claimed contributions.  As

explained above, the charitable-contribution deduction is one of the

largest federal tax expenditures, and having a third party to confirm

substantial contributions can be a valuable enforcement tool.  *See* Joint

Committee Estimates, *supra* p. 24, at 30–32.

In addition, the reporting requirement directly relates to the rule

against private inurement.  A key restriction on § 501(c)(3) status is

that "no part of the net earnings . . .  inures to the benefit of any private

shareholder or individual," defined as "persons having a personal and

private interest in the activities of the organization," which may include

substantial contributors.  I.R.C. § 501(c)(3) & Treas. Reg. § 1.501(a)-1(c);

*see also* Treas. Reg. § 1.501(c)(3)-1(d)(1)(ii) ("An organization is not

organized or operated exclusively for one or more of the purposes

specified in [§ 501(c)(3)] unless it serves a public rather than a private interest."). Substantial contributors are in a position to exercise influence over the organization and are potential parties to private inurement. Indeed, the intertwined relationship between the substantial-contributor reporting requirement and the Code's self-dealing rules is emphasized in § 6033's legislative history. *See* 1969 U.S.C.C.A.N. 1645, 1681 ("[T]here will have to be shown on each information return *the names and addresses of all substantial contributors*, directors, trustees, and other management officials—*all of whom are 'disqualified persons' for purposes of the new self-dealing rules and other provisions*—and of highly compensated employees.") (emphasis added).

Furthermore, information about substantial contributors directly relates to whether a § 501(c)(3) organization is classified as a public charity as opposed to a private foundation. One way to be classified as a public charity is to satisfy a public support test, which limits or excludes support from substantial contributors as public support. *See* I.R.C. §§ 170(b)(1)(A)(vi); 509(a)(1); 509(a)(2)(A); 4946(a)(1)(A) ("disqualified person" includes "substantial contributor"); Treas. Reg.

§ 1.170A-9(f)(6)(i) (defining support from general public). Another way is to be a "supporting organization" of one or more public charities under § 509(a)(1) or (2). *See* I.R.C. § 509(a)(3); *see also Quarrie*, 603 F.2d at 1277–78 ("Public charities were excepted from private foundation status on the theory that their exposure to public scrutiny and their dependence on public support would keep them from the abuses to which private foundations were subject. Supporting organizations are similarly excepted in so far as they are subject to the scrutiny of a public charity."). However, a § 501(c)(3) organization cannot qualify as a supporting organization if it is controlled directly or indirectly by a "disqualified person," which, as set forth in the statute, includes a "substantial contributor." I.R.C. §§ 509(a)(3)(C), 4946(a)(1)(A); *see* I.R.C. § 507(d)(2).

Finally, the reporting requirement directly relates to I.R.C. § 4958, which imposes excise taxes for "excess benefit transactions" on public charities' managers and "disqualified persons" who receive a benefit from certain tax-exempt organizations. Disqualified persons include anyone "in a position to exercise substantial influence over the affairs of the organization." I.R.C. § 4958(f)(1)(A). These include

substantial contributors.  *See* Treas. Reg. § 53.4958-3(e)(2)(ii); I.R.C.
§ 4958(c)(3)(B) (excise tax on certain transactions involving substantial
contributors to supporting organizations).

Aside from these direct statutory links between the § 6033(b)(5)
substantial-contributor reporting requirement and the enforcement of
the § 501(c)(3) regime, the requirement has an additional connection: its
deterrent effect.  In our "self-assessment tax system" built on "voluntary
compliance," *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350
(1977), it is widely accepted as a matter of tax policy that a reporting
requirement discourages misbehaving taxpayers.  *E.g.*, Thomas, *User-
Friendly Taxpaying*, 92 IND. L.J. 1509, 1533-1535 (2017) (explaining
how third-party reporting (such as that required on the Schedule B
form) is its own form of enforcement); Lederman, *Reducing Information
Gaps to Reduce the Tax Gap: When Is Information Reporting
Warranted?*, 78 FORDHAM L. REV. 1733, 1735 (2010) ("[A]ny information
that the taxpayer knows the government has about the taxpayer's
activities will foster honesty."); *see also* Joint Committee on Taxation,
*Overview of the Tax Gap*, JCX-19-19, at 3 tbl. 1 (May 8, 2019) (showing
that the vast majority of taxpayers voluntarily comply with the federal

tax laws).   In particular, the § 6033(b)(5) reporting requirement discourages individual taxpayers from claiming inaccurate charitable deductions on their returns as a way to potentially sidestep tax liability and also discourages tax-exempt organizations from engaging in self-dealing and other violations of the § 501(c)(3) statutory restrictions. The effect of the reporting requirement on "revenue collection efforts," *see AFP*, 594 U.S. at 618, therefore, is significant.

> **2.     The substantial-contributor reporting requirement does not affect rights outside the contours of the § 501(c)(3) regime**

Section 6033(b)(5)'s substantial-contributor reporting requirement does not reach outside § 501(c)(3)'s tax-subsidy program.  The only entity subject to the requirement is an organization described in § 501(c)(3) (like Buckeye) for which tax subsidies are claimed.  The reporting requirement does not apply to any non-§ 501(c)(3) affiliates it may have (current or future).  In addition, the substantial-contributor reporting requirement implicates only a small subset of donors (i.e., those who have given at least $5,000 if that is greater than 2% of the

total contributions received) for a subset of tax-exempt organizations (i.e., those that have opted into a tax-exempt status under § 501(c)(3)).[8]

The limited nature of § 6033(b)(5) does not stretch "outside the contours" of the § 501(c)(3) regime. *See Agency for Int'l Dev.*, 570 U.S. at 215. Organizations that do not wish to comply with the reporting requirement can refrain from applying for § 501(c)(3) status (*see* § 508(a)(1)) or, consistent with the *Regan* decision, operate as a § 501(c)(3) organization with a § 501(c)(4) affiliate, which would not be required to report its substantial contributors. *See Regan*, 461 U.S. at 543–44; *see also Mobile Republican*, 353 F.3d at 1361-62. Thus, the "condition directly relates to the benefit offered" and does not "'reach[] beyond' that benefit to regulate unrelated constitutional rights." *Ostergren*, 856 F. App'x at 571.

---

[8] As noted above, certain categories of public charities are exempted from the § 6033(b)(5) reporting requirement, including churches, the exclusively religious activities of any religious order, and certain public charities (other than supporting organizations) with gross receipts normally not more than $50,000. Treas. Reg. § 1.6033-2(g)(1).

**D.** **The District Court erred in applying *AFP*'s exacting-scrutiny standard because that case involved a mandatory disclosure regime, not a voluntary opt-in tax subsidy**

The District Court erred in applying *AFP*'s exacting scrutiny analysis instead of *Regan*'s rational-basis review analysis. *AFP* is distinguishable because—unlike the California requirement at issue there—§ 6033(b)(5)'s reporting requirement is not a compelled disclosure. *Regan* governs the requirement for a federal tax subsidy at issue here, and the court's rationale for side-stepping that binding precedent cannot itself withstand scrutiny. As explained below, the court overlooked the crucial distinction between the two cases: *AFP* involved a compulsory disclosure in order to engage in the otherwise constitutionally protected activity of soliciting charitable contributions, whereas *Regan* and its progeny involve a condition on obtaining a purely voluntary subsidy to which organizations like Buckeye have no entitlement.

### 1. *AFP* is distinguishable

*AFP* differs from this case because it involved a mandatory disclosure, whereas here the reporting requirement is a condition on a voluntary tax subsidy. *See* I.R.C. § 508(a). In *AFP*, the California

regulation at issue required charities seeking to operate and fundraise
in California to register with the Attorney General and file their IRS
Forms 990 and all attachments, including Schedule B, with the
Attorney General each year. *AFP*, 594 U.S. at 601-02. California's
requirement was a compelled disclosure because it was imposed upon
all charitable organizations seeking to operate in California, the
information disclosed was to assist the Attorney General in exercising
general regulatory authority, not the administration of a subsidy, and
the cost of noncompliance was a bar on all operations and soliciting of
contributions in California. *Id.* at 618. The Court emphasized that
charities have a First Amendment right to solicit contributions. *Id.*
(citing *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620,
633 (1980)). Thus, the harsh penalty of failing to comply with the
disclosure requirement—inability to operate or solicit contributions in
the state at all—rendered the requirement compulsory. *Id.* That
draconian result is a far cry from the result of noncompliance here.
Organizations that fail to comply with § 6033(b)(5)'s reporting
requirement do not lose the ability to operate or solicit contributions;

they merely face possible tax consequences.[9]  For this reason, the Court

in *AFP* made clear that its ruling did not extend to § 6033(b)(5)'s

"condition of federal tax-exempt status."  *AFP*, 594 U.S. at 617-18

(citing *Regan*).  The Court's description of the federal reporting

requirement underscores the material difference between the

mandatory disclosure in *AFP* and the § 6033(b)(5) reporting

requirement as a condition on a tax subsidy.

Moreover, in *AFP*, the organization could not operate without

complying with California's reporting requirement.  Here, in contrast,

under the federal tax exemption framework, a charitable organization

could forgo the substantial-contributor reporting requirement by not

applying for § 501(c)(3) status, or it could create an affiliate

organization under § 501(c)(4), which would not be subject to the

reporting requirement.

---

[9] "[A] failure to include any of the information required to be shown on a return filed under section 6033(a)(1)" is subject to limited penalties under § 6652(c)(1)(A)(ii) (generally $20 per day up to a maximum of the lesser of $10,000 or 5 percent of the organization's annual gross receipts).  An organization that fails to file a substantially complete Form 990 for three consecutive years could lose its tax-exempt status.  I.R.C. § 6033(j)(1)(A) (notice of failure to file), (j)(1)(B) (revocation).

The District Court ignored the Supreme Court's description of

§ 6033(b)(5) as "a condition of federal tax-exempt status," *AFP*, 594 U.S.

at 618.  It observed that § 6033(b)(5)'s "Disclosure Requirement requires

any 501(c)(3) to disclose their substantial donors in order to operate as a

501(c)(3)," (Opinion, RE 60, PageID # 853), but organizations have no

First Amendment right to operate as a publicly subsidized § 501(c)(3)

organization, as the Supreme Court made clear in *Regan*.  A disclosure

requirement tied to § 501(c)(3) status is not constitutionally

impermissible even if it impacts a First Amendment right, particularly

when an affiliate organization under § 501(c)(4) can be established to

avoid interference with the First Amendment right.  *Regan*, 461 U.S. at

545–47.

That something is "required" as an ongoing reporting obligation in

order to retain a voluntary tax subsidy does not automatically render it

a "compelled disclosure" subject to a heightened level of scrutiny, as the

District Court mistakenly assumed.  On the contrary, the Supreme

Court has repeatedly upheld similar conditions on subsidies relating to

First Amendment rights because the recipient of the subsidy was not

required to accept it, and because Congress generally has the power to

define what it will subsidize. *See, e.g.*, *Regan*, 461 U.S. at 550 (upholding a lobbying limitation imposed on organizations claiming tax-exempt status under § 501(c)(3) and explaining that "[a]lthough TWR does not have as much money as it wants, and thus cannot exercise its freedom of speech as much as it would like, the Constitution does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom.") (quoting *Harris v. McRae*, 448 U.S. 297, 318 (1980)) (internal quotation marks omitted); *Cammarano v. United States*, 358 U.S. 498, 513 (1959) (rejecting a First Amendment challenge to a regulation denying a tax deduction for lobbying purposes and noting that the taxpayer was "not being denied a tax deduction because they engage in constitutionally protected activities, but are simply being required to pay for those activities entirely out of their own pockets"); *Lewis Publ'g Co. v. Morgan*, 229 U.S. 288, 306-07 & n.3, 314-16 (1913) (rejecting a First Amendment challenge to a disclosure requirement for newspaper publishers in order to benefit from a discounted postal rate and observing that the publishers can "enjoy great privileges and advantages at the public expense . . . upon

condition of compliance with regulations deemed by [Congress] incidental and necessary" to the underlying "public policy").

Moreover, the § 6033(b)(5) substantial-contributor reporting requirement is content neutral. That is, any organization treated as exempt under § 501(c)(3) generally is required to report the names and addresses of its substantial contributors, regardless of its tax-exempt mission and purpose. *See Regan*, 461 U.S. at 548 ("The case would be different if Congress were to discriminate invidiously in its subsidies in such a way as to 'aim[ ] at the suppression of dangerous ideas.'") (quoting *Cammarano*, 358 U.S. at 513); *see also Cammarano*, 358 U.S. at 513 ("Nondiscriminatory denial of deduction from gross income to sums expended to promote or defeat legislation is plainly not aimed at the suppression of dangerous ideas."); *Speiser v. Randall*, 357 U.S. 513, 518 (1958) ("To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech."). Because the § 6033(b)(5) requirement applies across the board to all applicable § 501(c)(3) organizations, it is content neutral and does not warrant heightened scrutiny.

### 2. The District Court's rationale for sidestepping *Regan* is flawed

The District Court disregarded *Regan*'s ongoing viability and applicability to the § 501(c)(3) context. (Opinion, RE 60, PageID # 852.) While the court correctly identified two rules from *Regan*—that both "tax exemptions and tax-deductibility are a form of subsidy" and "although 'the government may not deny a benefit to a person because he exercises a constitutional right,' Congress may choose to not fund certain activities without offending the First Amendment"—it reasoned that cases since *Regan* have "developed on these rules." (*Id.* (citing *Regan*, 461 U.S. at 544-46).) Contrary to the District Court's reasoning, Supreme Court cases since *Regan* have confirmed *Regan*'s reasoning and holding, citing *Regan* as an illustration of a permissible condition on a government subsidy.

For example, in *F.C.C. v. League of Women Voters of California*, the Supreme Court held unconstitutional a condition on a federal broadcasting grant that required the recipient noncommercial broadcasting station to refrain from editorializing. 468 U.S. 364, 366, 402 (1984). The Court distinguished the permissible regime in *Regan*, pointing out that TWR's option to create a § 501(c)(4) affiliate to engage

in substantial lobbying meant that "Congress has not infringed any First Amendment rights . . . it has simply chosen not to pay for TWR's lobbying." *Id.* at 400 (quoting *Regan*, 461 U.S. at 546). The Court observed that, unlike in *Regan*, "a noncommercial educational station that receives only 1% of its overall income from CPB grants is barred absolutely from all editorializing." *Id.* "Therefore, in contrast to the appellee in [*Regan*], such a station is not able to segregate its activities according to the source of its funding." *Id.*

More recently, in *Agency for International Development*, the Supreme Court again relied on *Regan* to "illustrate" a "condition[] that define[s] the limits of the government spending program," and is therefore permissible. 570 U.S. at 214-15; *see also Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012) (quoting *Regan* for the fundamental principle that "[l]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes"). And most notably for the purposes of this case, the Supreme Court in *AFP* cited *Regan* in support of its observation that "revenue collection efforts and conferral of tax-exempt status may raise issues not presented by California's disclosure requirement, which can prevent charities from

operating in the State altogether."  594 U.S. at 618.  Thus, neither *AFP*

nor any prior Supreme Court case has eroded the holding or continued

viability of *Regan*.

Consistent with the Supreme Court's repeated affirmation of

*Regan*'s analysis of First Amendment challenges to conditions on

voluntary government subsidies, other courts (including this Court)

continue to rely on the case.  *See Zillow, Inc. v. Miller*, 126 F.4th 445,

461 n.5 (6th Cir. 2025) (citing *Regan* for the proposition that "the

government generally does not violate the First Amendment by

subsidizing select speech except when the government selects speech

based on its viewpoint"); *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d

640, 648 (7th Cir. 2013) (distinguishing *Citizens United v. Fed. Election

Comm'n*, 558 U.S. 310 (2010), from *Regan* because *Citizens United*

applies to "statutes that prohibit or burden speech," whereas *Regan*

"controls on government subsidies of speech"); *Parks v. Commissioner*,

145 T.C. 278, 335–41 (2015) (citing *Regan* to support rejection of First

Amendment challenge to Internal Revenue Code's excise tax on a

private foundation's lobbying expenditures and holding that strict

scrutiny did not apply), *aff'd sub nom. Parks Found. v. Commissioner*,

717 F. App'x 712 (9th Cir. 2017); *cf. Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 911–12 (6th Cir. 2019) (en banc) ("Private organizations do not have a constitutional right to obtain governmental funding to support their activities.").

Misconstruing the contrary ruling in *Regan*, the District Court concluded that "if Congress denies a benefit because an *organization* will not comply with a restriction on First Amendment activities, that denial may be unconstitutional," and cited *Rust v. Sullivan* and *Agency for International Development* as support. (RE 60, PageID # 852–853). The court's reliance on those cases is misplaced.

In *Rust v. Sullivan*, the Court observed that "our unconstitutional conditions cases involve situations in which the Government has placed a condition on the *recipient* of the subsidy rather than on a particular program or service, thus effectively prohibiting the recipient from engaging in the protected conduct outside the scope of the federally funded program." *Rust*, 500 U.S. at 197. It distinguished that situation from the permissible condition imposed in *Regan*. *Id.* at 197-98 (citing *Regan*, 461 U.S. at 544-48). As in *Regan*, the condition here is imposed on the program, not the recipient. Section 6033(b)(5)'s reporting

requirement is limited to the tax subsidy program with respect to
organizations described in § 501(c)(3), and organizations are free to
engage in protected conduct outside the scope of that program. Thus,
this case fits readily within the analysis of *Rust*.

*Agency for International Development* likewise supports the
Government here. As noted above, the Supreme Court there relied on
*Regan* to "illustrate" a permissible "condition[] that define[s] the limits
of the government spending program." 570 U.S. at 214-15. The Court
observed that the condition in *Regan* "did not prohibit that [§ 501(c)(3)]
organization from lobbying Congress altogether" because it could
establish a § 501(c)(4) affiliate. *Id.* at 215. In citing *Regan* as an
example of conditions that do not violate the First Amendment—as an
instance in which Congress had "merely 'chose[n] not to subsidize
lobbying'"—the Court confirmed the authority's continuing vitality,
despite the District Court's suggestion to the contrary. *Id.* (quoting
*Regan*, 461 U.S. at 544) (alteration in original).

Thus, both *Rust* and *Agency for International Development*
affirmed *Regan*'s holding and compared their facts to those in *Regan*,
rendering *Regan* the proper framework for this case. *See Rust*, 500 U.S.

at 197-98 (discussing *Regan*, 461 U.S. at 544-48); *Agency for Int'l Dev.*,
570 U.S. at 215 (same). Buckeye is not being denied a benefit because
of its First Amendment activities; Congress has simply chosen not to
subsidize a tax-exempt organization under § 501(c)(3) and give its
contributors deductions without generally requiring the organization to
report its substantial contributors. Because the § 6033(b)(5) reporting
requirement applies only to organizations described in § 501(c)(3), it
does not affect rights "outside the scope" of this provision. *Rust*, 500
U.S. at 197. And, consistent with the dual-structure option repeatedly
blessed by the Supreme Court, Buckeye can form a § 501(c)(4) affiliate,
which would not be required to report substantial contributors. *E.g.,
Agency for Int'l Dev.*, 570 U.S. at 215 (citing "dual structure" approved
in *Regan*).

The District Court's indifference toward the relevance of
Buckeye's options under the *Regan* rubric likewise misses the mark.
(RE 60, PageID # 854 n.6.) The court stated, "That [Buckeye] could re-
organize as a different type of 501(c) organization does not change this
conclusion. . . . If [Buckeye] reorganizes as a different type of 501(c)
organization, it would lose tax deduction status. Thus, the allegedly

unconstitutional condition (the disclosure requirement) is on the tax deduction status." *Id.* The court's reasoning is flawed. First, it conflicts with the Supreme Court's contrary analysis in *Regan*. Just as taxpayers there had no right to claim deductions for contributions to an organization that lobbied, taxpayers here have no right to claim deductions for contributions to an organization that does not comply with § 6033(b)(5)'s reporting requirement. The District Court failed to appreciate that important parallel.

The District Court also failed to consider that Buckeye could create a § 501(c)(4) affiliate, as the *Regan* Court concluded was not "unduly burdensome" for the organization there (i.e., TWR). *Regan*, 461 U.S. at 544-45 & n.6. Thus, Buckeye and its contributors may still enjoy "tax-deduction" status for the § 501(c)(3) organization, and no-substantial-contributor reporting for the § 501(c)(4) affiliate. What Buckeye cannot enjoy under the statutory framework is an entitlement to § 501(c)(3) status while simultaneously refusing to satisfy a condition for that subsidy by failing to report its substantial contributors to the § 501(c)(3) organization. The Supreme Court has repeatedly confirmed

that this outcome is permissible. *See Agency for Int'l Dev.*, 570 U.S. at 214; *League of Women Voters*, 468 U.S. at 400.

**E.    Even under exacting scrutiny, § 6033(b)(5)'s substantial-contributor reporting requirement is constitutional as a matter of law**

The District Court concluded that evaluating the statute under the exacting scrutiny standard would require factual determinations regarding IRS use of the information.  (Opinion, RE 60, PageID # 854.) But that conclusion ignores the fact that Congress—and not the IRS— enacted the federal substantial-contributor reporting requirement. Prior to § 6033(b)(5)'s enactment in 1969, the IRS could obtain information regarding § 501(c)(3) contributions only on a case-by-case basis from the organization, the contributor, or both.  After extensive investigation into abusive practices by § 501(c)(3) organizations and their contributors, however, Congress determined that the prior information regime was woefully insufficient.  H.R. Rep. 91-413 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1645, 1681; *see generally* Philip Hackney, *The 1969 Tax Reform Act & Charities: Fifty Years Later*, 17 PITT. TAX. REV. 235 (2020).  The new reporting requirements were enacted to serve "the purpose of carrying out the internal revenue

laws." I.R.C. § 6033(a). As the nonpartisan Joint Committee on Taxation has explained, the "primary purpose" of the newly enacted information-reporting requirements "was to provide the Internal Revenue Service with the information needed to enforce the tax laws." Joint Committee on Taxation, *General Explanation of the Tax Reform Act of 1969*, JCS-16-70, at 52 (Dec. 3, 1970); *see also Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1141 (6th Cir. 2022) (noting that, in our "system of self-reporting[,] . . . there is a duty to report all of the financial information that Congress requires"); *Byers v. United States Internal Revenue Serv.*, 963 F.3d 548, 552 (6th Cir. 2020) ("Our self-reporting system of taxation relies on honesty at the front end and investigation at the back end.").

Thus, any burden imposed by § 6033(b)(5)'s reporting requirement is not "unnecessary" because Congress long ago determined that narrower alternatives were "inadequate." *Contrast AFP*, 594 U.S. at 611. This reporting regime has stood the test of time. Although Congress has had almost 60 years to reconsider that determination, it has not done so. And indeed, any substitute approach that relies on the IRS first identifying (without the benefit of substantial contributor

information) organizations that may not be operating in accordance with the requirements of § 501(c)(3), and then seeking their specific contributor information, would be insufficient because the substantial-contributor reporting requirement helps to identify potentially noncompliant organizations or contributors in the first place. Such an approach also runs up against the reality of limited government resources. Though the IRS has authority to obtain information regarding substantial contributors on a case-by-case basis in an examination of, or via summons issued to, any charitable organization, *see* I.R.C. §§ 7601, 7602, such individualized collection is necessarily constrained by resource availability.

Even under an exacting-scrutiny analysis, § 6033(b)(5)'s substantial-contributor reporting requirement passes constitutional muster as a matter of law. "[E]xacting scrutiny requires that there be 'a substantial relation between the disclosure requirement and a sufficiently important governmental interest,' and that the disclosure requirement be narrowly tailored to the interest it promotes." *AFP*, 594 U.S. at 611 (citations omitted). In contrast to California's reporting requirement in *AFP*, § 6033(b)(5) satisfies that standard because it (i) is

substantially related to an important government interest (i.e., revenue collection and enforcement of the § 501(c)(3) statutory restrictions) and (ii) is narrowly tailored to promote this interest.

### 1. Section 6033(b)(5) is substantially related to an important government interest

The substantial-contributor reporting requirement substantially relates to the government's interest in revenue collection and enforcement of the Internal Revenue Code's charitable exemption laws. Congress adopted this requirement in 1969 as part of a larger overhaul of the laws surrounding § 501(c)(3) tax exemption after observing widespread abuse of the charitable exemption for non-charitable purposes. Congress designed the new requirements to "provide the Internal Revenue Service with the information needed to enforce the tax laws" only after concluding "that more information is needed." S. Rep. No. 91-552 (1969), *reprinted in* 1969 U.S.C.C.A.N. 2027, 2080. Congress's addition of the substantial-contributor reporting requirement in particular was intended to "facilitate meaningful enforcement" of "new self-dealing rules and other provisions" regulating § 501(c)(3) organizations. H.R. Rep. 91-413 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1645, 1681.

As discussed above, pp. 34–37, the identities of substantial contributors help ensure compliance with Congressional requirements for § 501(c)(3) organizations. Because substantial contributors are in a position to exercise influence over the organization, their role is addressed in several places in the Code. For instance, their identities can help inform whether the organization can be classified as a public charity as opposed to a private foundation. *See* I.R.C. §§ 509(a); 170(b)(1)(A)(vi); 4946(a)(1)(A). This information also directly relates to whether § 4958 excise taxes for "excess benefit transactions" are owed. I.R.C. § 4958(c)(1)(A) (transaction with disqualified person); § 4958(c)(3)(A), (B) (supporting organization and substantial contributor); § 4958(f)(1)(A) (disqualified person); Treas. Reg. § 53.4958-3(e)(2)(ii) (substantial contributor). And the substantial-contributor information substantially relates to whether an organization might be classified as a "supporting organization," which is not permitted if the charity is controlled directly or indirectly by a "disqualified person,"

including a "substantial contributor." I.R.C. §§ 509(a)(3)(C); 4946(a)(1)(A); *see* I.R.C. § 507(d)(2).[10]

### 2. Section 6033(b)(5) is narrowly tailored to the interest it promotes

The substantial-contributor information likewise is narrowly tailored to provide the IRS with sufficient information to further its mission of revenue collection and monitoring the propriety of tax exemption and charitable deductions. For one thing, it applies to only a subset of § 501(c)(3) organizations. Congress does not require reporting by churches, religious activities of religious orders, and public charities with gross receipts normally not more than $50,000. I.R.C. § 6033(a)(3)(A), (B); Treas. Reg. § 1.6033-2(g), (g)(1)(iii). It is also limited to a small subset of contributors: those who contribute more than $5,000 if that amount is more than two percent of the organization's total contributions, or those who contribute more than 2% of total contributions during the year (minimum of $5,000, including bequests and devises). I.R.C. §§ 6033(b)(5), 507(d)(2)(A); Treas. Reg.

---

[10] The IRS declarations submitted by the Government in support of its motion for summary judgment (RE 43) illustrate these important uses of Schedule B information. *See* RE 43-1, RE 43-6, RE 43-9, RE 43-11.

§ 1.6033-2(a)(2)(iii)(A). In other words, the reporting requirement applies only to those contributors most likely to influence the organization and those who can claim significant charitable deductions on their individual returns. In this case, based on its total contributions, Buckeye was required to report only those contributors who donated approximately $50,000 or more. (Gov't MTD, RE 21, PageID # 61 n.4.)

Moreover, the reporting is not over-inclusive. Substantial contributors, by definition, are potential parties to private inurement, self-dealing, and other impermissible uses of the § 501(c)(3) charitable exemption. *See, e.g.*, I.R.C. § 4958(f)(1)(A). Further, the information is for "revenue collection efforts and conferral of tax-exempt status" and is reported *to the IRS*, i.e., the bureau responsible for administering the tax deductions and tax exemptions to which the information directly relates (and for keeping the information confidential under federal law). *See AFP*, 594 U.S. at 618 (citing *Regan*, 461 U.S. 540).

For public charities like Buckeye, the reporting is done on a confidential basis, and Congress has imposed strict measures to ensure the information is well-protected by the IRS. The IRS is prohibited by

federal law from disclosure of return information (I.R.C. §§ 6103(a), 6104(b) & (d)(3)), with the risk of civil damages and criminal penalties attending any wrongful disclosure. I.R.C. §§ 7213, 7431. No such statutory prohibition was present in *AFP*.

Moreover, in *AFP*, the Court noted that "[d]uring the course of litigation, the Foundation identified nearly 2,000 confidential Schedule Bs that had been inadvertently posted to the Attorney General's website," *AFP*, 594 U.S. at 604. The lower court's summation was succinct: "[T]he amount of careless mistakes made by the Attorney General's Registry is shocking." *Id.* at 604–05. Inadvertent disclosure of Schedule B by the IRS, by comparison, is almost non-existent, and assurances of confidentiality backed by severe penalties sets federal contributor reporting apart from that in *AFP*. [11] "While assurances of confidentiality" do not "eliminate" a potential constitutional burden,

---

[11] The District Court noted that there have been fourteen known unauthorized disclosures of contributor information (Form 990) since 2010. (Opinion, RE 60, PageID # 844–845.) Although any disclosure is unfortunate, averaging one public disclosure per year out of the more than 200,000 Forms 990 filed annually actually demonstrates the efficacy of the IRS's confidentiality provisions in place. (*See* Gov't MSJ, RE 43, PageID # 493 n.7 (noting that in 2019 the IRS received 218,516 Form 990 returns from § 501(c)(3) public charities)).

they "may reduce" it. *Id.* at 616. Here, distinctively, the assurance of confidentiality is far greater, rooted in the same federal law protecting from disclosure all taxpayer return information that falls within the ambit of § 6103.

Section 6033(b)(5) is narrowly tailored for the additional reason that any alternatives are insufficient to accomplish Congress's purpose. In *AFP*, the Court observed that "a reasonable assessment of the burdens imposed by disclosure should begin with an understanding of the extent to which the burdens are unnecessary," which includes consideration of whether "various narrower alternatives proposed by the plaintiffs were inadequate." *AFP*, 594 U.S. at 611. As previously noted, § 6033(b)(5) was enacted in 1969 only after Congress had determined that the IRS did not have sufficient information to enforce the rule against private inurement and other limitations on § 501(c)(3) organizations. Examining organizations on a case-by-case basis had failed to deter the rampant abuse that the 1969 tax reform was designed to stamp out. Thus, any alternatives to the upfront collection of this limited snapshot of a charity's major donors would be inadequate

to support Congress's critical effort to stamp out abuse of the § 501(c)(3) tax-subsidy regime.

The history to the § 6033(b)(5) reporting requirement emphasizes this point. Congress enacted the requirement because the IRS needed "more information" to "enforce the tax laws," and the identities of substantial contributors, in particular, were crucial. H.R. Rep. No. 91-413, at 36 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1645, 1681. "[T]here will have to be shown on each information return the names and addresses of all substantial contributors . . . all of whom are 'disqualified persons' for purposes of the new self-dealing rules and other provisions." *Id.* In making such a requirement, Congress did not ignore potential privacy concerns of substantial contributors. In fact, the Senate Finance Committee separately stated that "it decided not to require that the names and addresses of substantial contributors be disclosed to the public in the case of exempt organizations other than private foundations." S. Rep. 91-552, at 53 (1969), *reprinted in* 1969 U.S.C.C.A.N. 2027, 2080–2081. "[S]uch organizations would, however, be required to disclose these names to the Internal Revenue Service." *Id.* 1969 U.S.C.C.A.N. 2027, 2081. The legislators' reasoning was that

"some donors prefer to give anonymously" and "[t]o require public disclosure in these cases might prevent the gifts." *Id.*

The legislative history to § 6033(b)(5), therefore, underscores that the information is necessary and narrowly tailored toward the specific purpose of providing the IRS sufficient information to enforce laws against charitable self-dealing. Any alternatives to this approach would be inadequate and might result in more burdens upon compliant charitable organizations and donors because the IRS would lack this helpful diagnostic snapshot. Indeed, as previously explained, any substitute to § 6033(b)(5) that entails the IRS first opening an examination of an organization that may be violating the § 501(c)(3) restrictions on private inurement or self-dealing, and then seeking the organization's specific contributor information, is insufficient because that information helps the IRS to identify which organizations warrant examination in the first place. The IRS does not have the resources to examine every § 501(c)(3) organization for possible violations regarding its substantial contributors. And, as noted above (pp. 37–38), upfront information reporting itself fosters compliance with the requirements associated with § 501(c)(3). Other information-gathering tools available

to the IRS, such as the ability to issue summonses, would likewise fall short for this reason. *See* I.R.C. § 7602(a).

No other information required to be reported by § 6033(b) can serve as an adequate substitute. Section 6033(b) requires the reporting of gross income, expenses, disbursements, and the names and addresses of foundation managers and highly compensated employees, but none of that information reveals the identities of substantial contributors, who are in a position to exert significant influence over the organization and are potential parties to impermissible private inurement. As substantial contributors, too, these individuals can separately claim charitable deductions for their contributions (I.R.C. §§ 170(a)(1), (c)(2)) to reduce their individual tax liability. The substantial-contributor reporting requirement sheds light on both aspects of the twofold tax subsidy of § 501(c)(3) status (i.e., tax exemption and tax-deductible contributions) and cannot be adequately replicated through any other information collected under § 6033(b).

## CONCLUSION

The order of the District Court should be reversed.

Respectfully submitted,

/s/ Marie E. Wicks

| | |
|---|---|
| JUDITH A. HAGLEY | (202) 514-8126 |
| MARIE E. WICKS | (202) 307-0461 |
| *Attorneys* | |
| *Tax Division* | |
| *Department of Justice* | |
| *Post Office Box 502* | |
| *Washington, D.C. 20044* | |

*Of Counsel:*
KELLY A. NORRIS
  *Acting United States Attorney*

JUNE 20, 2025

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

> [X]   this document contains <u>12,061</u> words, **or**

> [ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

> [ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   <u>/s/ Marie E. Wicks</u>

Attorney for  <u>Internal Revenue Service, et al.</u>

Dated:  <u>June 20, 2025</u>

## CERTIFICATE OF SERVICE

It is hereby certified that on June 20, 2025, the foregoing brief for the appellants Internal Revenue Service, et al., was electronically filed with the Clerk of the Court by using the appellate CM/ECF system. I further certify that appellee, whose counsel are registered with CM/ECF, will be served via CM/ECF.

_/s/ Marie E. Wicks_

MARIE E. WICKS

_Attorney_

# ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

### Pursuant to Sixth Circuit Rule 30(g)

| Record Entry No. | Description | Page ID Range |
|---|---|---|
| 1 | Complaint | 1–12 |
| 21 | Government's Motion to Dismiss | 56–85 |
| 35 | Buckeye's Opposition to Motion to Dismiss | 140–164 |
| 36 | Buckeye's Motion for Summary Judgment | 165–184 |
| 36-1 | Robert Alt Declaration | 185–188 |
| 43 | Government's Motion for Summary Judgment | 474–498 |
| 43-1 | Lynn A. Brinkley Declaration | 499–506 |
| 43-6 | Steven Fager Declaration | 643–648 |
| 43-9 | Adrian F. Gonzalez Declaration | 653–657 |
| 43-11 | Jennifer A. Jett Declaration | 674–677 |
| 60 | Opinion | 843–855 |
| 68 | Amended Complaint | 877–889 |
| 71 | Motion to Certify | 907–924 |
| 73 | Order Certifying | 928–931 |